# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | No. 19-CR-0348-1 |
| SUNNY SOK<br>#77311-066<br>F.D.C. PHILADELPHIA<br>7TH & ARCH STREETS<br>PHILADELPHIA, PA. 19106 | : | |

**Goldberg, J.**                                                                                       **June 2, 2021**

## MEMORANDUM OPINION

This matter stems from an April 24, 2019 traffic stop of Defendant Sunny Sok. In conjunction with this stop, Philadelphia Police Officer Joseph Mason ascertained that Sok's vehicle registration had expired, and, during a subsequent search of Sok's vehicle, narcotics and a firearm were discovered.

Sok was charged with possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One), possession of a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 924(c)(1)(A)(i) (Count Two), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 8922(g)(1) (Count Three). On October 29, 2020, a jury convicted Sok on Counts One and Two and, immediately thereafter, following a bench trial, Sok was found guilty on Count Three.

Sok now moves for judgment of acquittal on Counts One and Three. For the following reasons, his Motions will be denied.

1

## I. PROCEDURAL BACKGROUND

On November 8, 2019, Sok filed a Motion to Suppress physical evidence recovered from his vehicle, arguing that Officer Mason lacked probable cause for the search. I held a hearing and later denied Sok's motion. I concluded that the search of his vehicle did not violate the Fourth Amendment because, even if the search was otherwise unconstitutional, all physical evidence would have been inevitably discovered through implementation of the City of Philadelphia Police Department's Live Stop Policy.[1]

On November 11, 2020, Sok filed a post-verdict motion pursuant to Federal Rule of Criminal Procedural 29(c) regarding Count One, arguing that the Government did not offer evidence that the weight of the methamphetamine in Sok's car was at least 50 grams. Sok posits that the evidence introduced at trial supports only the lesser crime—that he possessed at least 5 grams but less than 50 grams of methamphetamine.

On January 8, 2021, Sok filed a supplemental motion regarding Count Three, arguing that the Government did not offer evidence to establish that he had knowledge of his status as a person prohibited from carrying a firearm.

## II. FACTUAL BACKGROUND

The evidence presented by the Government relevant to Sok's current motions is set forth below:

1. On April 24, 2019, Philadelphia Officer Joseph Mason was on patrol when he observed a vehicle make an illegal right turn at a red light in Philadelphia, Pennsylvania. Officer Mason activated his lights and sirens and pulled over the vehicle, which was being operated

---

[1] Pursuant to 75 Pa. Cons. Stat. § 6309.2(a)(2), the Pennsylvania Motor Vehicle Code *permits* law enforcement officers, in the interest of public safety, to direct that a vehicle be towed when an officer confirms that the car lacks a valid registration. The Philadelphia Police Department's Live Stop Policy mandates that any car being operated in violation of 75 Pa. Cons. Stat. § 6309.2, such as one lacking valid registration, *shall* be impounded in accordance with the procedures set forth in the policy. (See Phila. Pol. Dept. Directive 12.8.)

and was owned by Sok. (N.T. 10/28/20 at 31:11–33:3, ECF No. 104; N.T. 10/29/20 at 17:7–14, ECF No. 98.)

2. After learning that Sok's vehicle registration had expired, Officer Mason asked Sok to exit the vehicle and detained Sok in the back of the police car. (N.T. 10/28/20 at 35:21–36:24.)

3. Officer Mason then searched inside of Sok's vehicle. (Id. at 36:23–37:19.) From inside of a black backpack that was on the backseat of the car, Officer Mason recovered a bag of white crystals and powder. (Id. at 37:22–38:4, 45:25–46:11.) From the vehicle's center console, he recovered a revolver and a closed soup container, which housed a bag of pills, a white power, and an off-white powder. (Id. at 38:5–23.)

4. Based on a careful review of the record, it is somewhat unclear as to where some of the suspected narcotics were found in Sok's car and how they correspond with the Government's trial exhibits. However, trial testimony did clearly establish that the white crystals and powder found in the backpack and center console were suspected methamphetamine. Each of these items were documented on Philadelphia Police Department Property Receipt No. 3407513 and were marked as Government Exhibits 8A (two baggies of suspected methamphetamine), 8B (one baggie of suspected methamphetamine), and 8C (one baggie of suspected methamphetamine). (Id. at 38:5–23, 45:25–46:11; Gov't Exs. 8, 16.)

5. Officer Mason testified at trial, during which he described Government Exhibits 8A, 8B, and 8C as containing an "off-white chunky or rock-like substance." (N.T. 10/28/20 at 45:25–46:11.) He testified that based on his 18 years of experience as a Philadelphia police officer, he believed that the baggies' contents were methamphetamine. (Id. at 45:25–46:11, 68:8–12, 74:9–21.)

6. Dr. Anita Bose, a forensic scientist with the Philadelphia Police Department, analyzed most of the alleged narcotics recovered from Sok's vehicle. (N.T. 10/28/20 at 5:9–15, 9:14–10:14, ECF No. 90.) She documented her findings in a Chemistry Laboratory Report ("Lab Report"), which was admitted into evidence as Government Exhibit 17. (Id.)

7. Dr. Bose received the four baggies from Government Exhibits 8A, 8B, and 8C and referenced them in her Lab Report as "Items" 8A, 8B, and 8C. It is undisputed that Government Exhibits 8A, 8B, and 8C refer to the same four baggies as those referenced in Dr. Bose's Lab Report Items 8A, 8B, and 8C.[2] Dr. Bose's testimony and Lab Report revealed that she chemically tested only three of the four baggies, including one of two baggies from 8A, the single baggie in 8B, and the single baggie in 8C. (N.T. 10/28/20 at 16:12–17:24; Lab Report at 4, ECF No. 85-1.) All three tested positive for methamphetamine. (Id.) Dr. Bose did not chemically analyze the second baggie in 8A, though her testimony and written records confirm that when she received all four baggies, the untested baggie in Item 8A was taped to the other, tested baggie in Item 8A. (N.T. 10/28/20 at 16:12–17:4; Lab Report at 4.) Sok stipulated that the untested baggie weighed 29.198 grams. (N.T. 10/28/20 at 16:12–17:24.)

---

2   For the sake of clarity, I will refer to these four baggies as "Items 8A, 8B, and 8C."

8. Drug Enforcement Administration ("DEA") Supervisory Special Agent Randy Updegraff, who was accepted as an expert in drug trafficking, described the narcotics recovered from Sok's vehicle. (N.T. 10/28/2020 at 92:7–25, 96:20–97:14, 100:19–101:11.) Based on his 23 years of experience as a DEA agent, he opined that the narcotics and paraphernalia found in Sok's car were consistent with drug trafficking. (Id. at 100:19–101:11.) His testimony reflected that he believed that all four baggies in Items 8A, 8B, and 8C, including the untested baggie, contained methamphetamine. (Id.)

9. During the bench trial on Count Three, the Government submitted a number of joint stipulations into evidence, detailed below.

### III. LEGAL STANDARD

Federal Rule of Criminal Procedure 29(c) permits a defendant to "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later. . . . If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." A motion for a post-verdict judgment of acquittal requires the court to "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Wolfe, 245 F.3d 257, 261 (3d Cir. 2001); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court must "draw all reasonable inferences in favor of the jury verdict." United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996). "Courts must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005).

A defendant bears an "extremely high" burden when challenging the sufficiency of the evidence supporting a jury verdict. United States v. Iglesias, 535 F.3d 150, 155 (3d Cir. 2008) (quoting United States v. Lore, 430 F.3d 190, 203-04 (3d Cir. 2005)). "Thus, a finding of insufficiency should 'be confined to cases where the prosecution's failure is clear.'" United States

4

v. Smith, 294 F.3d 473, 477 (3d Cir. 2002) (quoting United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984)).

IV. **DISCUSSION**

   A. **Challenge to the Sufficiency of the Evidence – Possession with Intent to Distribute Over 50 Grams of Methamphetamine (Count One)**

Sok acknowledges that the Government produced evidence that he possessed 42.289 grams of methamphetamine through Items 8B, 8C, and the first of two baggies in 8A. He nonetheless seeks acquittal on Count One, arguing that the Government failed to produce evidence that he possessed over 50 grams of methamphetamine. (Def.'s Mot. at 3–4, ECF No. 85.) The crux of Sok's argument centers on the second of two baggies recovered and identified as Item 8A of Dr. Bose's Lab Report. As for the first baggie in Item 8A, Sok acknowledges that the jury was presented with evidence that it weighed 28.129 grams and that it tested positive for methamphetamine. However, Sok asserts that while he stipulated that the second baggie weighed 29.198 grams, he did not agree that it tested positive for methamphetamine. Thus, Sok presses that because this bag was not tested, the Government failed to introduce evidence upon which the jury could have concluded that it consisted of methamphetamine. The Government responds that sufficient circumstantial evidence was presented to support the jury's conclusion that the second baggie contained methamphetamine and, thus, the verdict that Sok possessed more than 50 grams of methamphetamine.

"It is well-established that 'lay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the . . . alleged narcotics.'" United States v. Stewart, 179 F. App'x 814, 818 (3d Cir. 2006) (citing United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir. 1976)). "So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a

5

reasonable doubt, the lack of scientific evidence is not objectionable." Id.; see also United States v. Harrell, 737 F.2d 971, 978 (11th Cir. 1984) (explaining that direct evidence is not required and circumstantial evidence is sufficient to prove the identity of a controlled substance).

Jury convictions for narcotics distribution charges have been upheld in cases where chemical analyses were lacking but where circumstantial evidence sufficiently identified the narcotics at issue. For example, in United States v. Dixon, 67 F. App'x 793, 795 (4th Cir. 2003), the United States Court of Appeals for the Fourth Circuit affirmed a conviction for a possession with intent to distribute phencyclidine ("PCP"), even though the Government produced no expert chemical analysis at trial. Id. The court concluded that sufficient circumstantial evidence supported the identification of the PCP, including testimony regarding the physical description of the substance and its packaging. Id.

The United States Court of Appeals for the Third Circuit has likewise upheld a conviction for possession with intent to distribute cocaine where no chemical testing was performed to identify the narcotics in question. Stewart, 179 F. App'x at 819. In Stewart, the Third Circuit reviewed the evidence offered by the Government at trial regarding identification of the suspected narcotics, which consisted entirely of lay witnesses testimony of individuals that sold and purchased the narcotics. Id. In affirming the trial court's denial of a request for a new trial, the Third Circuit concluded that sufficient circumstantial evidence, including the witnesses' descriptions of the physical appearance of the drugs, provided "ample" circumstantial evidence to "allow the jury to find beyond a reasonable doubt that the substance was in fact cocaine." Id.

Similarly, in United States v. Scott, 725 F.2d 43, 44, 46 (4th Cir. 1984), the Fourth Circuit affirmed a jury verdict for possession of cocaine, despite the Government's lack of chemical testing to identify the substance. The court found that sufficient circumstantial evidence, including

6

a lay witness' testimony about his familiarity with and the appearance of the narcotics in question, amongst other circumstantial evidence, was sufficient to identify the drugs and support the conviction. Id. at 46; see also United States v. Isaac, No. 05-576-1, 2008 WL 3919353, at *5 (E.D. Pa. Aug. 26, 2008) ("Neither expert testimony nor chemical analysis is required for a jury to properly find the substance distributed was [the narcotic in question].").

Here, it is true that there was no chemical testing of the second baggie in Item 8A. However, considering all of the evidence in the light most favorable to the Government, sufficient circumstantial evidence was presented to permit the jury to conclude that its contents were methamphetamine.

First, chemical lab testing confirmed that three of the four baggies of suspected methamphetamine (Items 8B, 8C, and the first baggie in 8A) all tested positive for methamphetamine. (N.T. 10/28/20 at 16:12–17:4; Lab Report at 4.) When the four baggies were presented to Dr. Bose, the untested baggie in Item 8A was taped to the second baggie that did, in fact, test positive for methamphetamine. (Id.) Viewing this evidence in the light most favorable to the Government, the jury was well within its right to conclude that the untested baggie contained the same methamphetamine contents as both the baggie to which it was taped and the two other baggies found in the same vehicle.

Additional circumstantial evidence further supported the verdict regarding the contents of the untested baggie in Item 8A. This evidence included the testimony and opinions of two seasoned law enforcement officers about the physical appearance of the baggies' contents and packaging. First, Officer Mason testified that based on his 18 years of experience as a Philadelphia Police Officer, he believed that the "off-white chunky or rock-like substance" in all four baggies was methamphetamine. (N.T. 10/28/20 at 45:25–46:11, 68:8–12, 74:9–21 ("There was a – in my

experience, I'm going to say a large amount of various narcotics [recovered from Sok's vehicle]. There was a white crystal substance, which we believed to be methamphetamine.").)

The written description in the Property Receipt of the appearance of the packaging and contents of the four baggies was also consistent. The four baggies logged on Philadelphia Police Department Property Receipt No. 3407513 were described as "[f]our (4) ziplock baggies containing a white crystalized and chunky substance alleged Crystal Methamphetamine." (Gov't Ex. 16.) Officer Mason's description of the untested bag in conjunction with the description in the Property Receipt are further circumstantial evidence upon which the jury could conclude that the fourth baggie contained methamphetamine.

The Government also presented the expert opinion of Supervisory Special Agent Randy Updegraff, a 23-year veteran of the DEA who was accepted as an expert in drug trafficking. Agent Updegraff testified that he reviewed the police reports, property receipts, items seized from Sok's car, the photograph of Items 8A, 8B, and 8C, and the Lab Report. (N.T. 10/28/2020 at 51:18–52:20, 56:6–10, 58:5–15.) Based on his review of Items 8A, 8B, and 8C, which included the untested baggie in Item 8A, he described their packaging as follows:

> Q. Are you familiar with – well, you said you reviewed the reports in this case. And as you know, there are approximately 70 grams of methamphetamine that was seized from the Defendant. Do you have an opinion as to whether or not that amount is consistent with personal use or distribution?
> A. I do.
> Q. What is your opinion?
> A. My opinion is the way the drugs were packaged, they were packaged in ounce quantities and quarter ounce quantities, they would – that amount of drugs being the two-ounce quantities, so it was approximately 56 grams, in two bags, so two ounces and two bags, approximately seven grams or quarter ounces, those are quantities that would be either distributed at that level and sold for a wholesale price to another distributor, or they could be broken down into $50 bags. That is typically how methamphetamine is sold on the street. . . .

(Id. at 100:19–101:11.)

While this opinion was primarily offered to explain that the narcotics, packaging, and paraphernalia found in Sok's vehicle were consistent with distribution, Agent Updegraff's testimony certainly included his opinion that all of the white powder found in each bag contained methamphetamine. (N.T. 10/28/2020 at 101:10–11 ("That is typically how methamphetamine is sold on the street. . . .").) This is yet another piece of circumstantial evidence to support the jury's conclusion that the untested baggie in Item 8A was methamphetamine.

In sum, viewing all of the evidence in the light most favorable to the Government, a rational jury could have concluded that the second baggie in Item 8A, which weighed 29.198 grams, consisted of methamphetamine. Chemical testing confirmed that three of the four baggies tested positive for methamphetamine. The only untested baggie was taped to another baggie that did contain methamphetamine. Both an experienced Philadelphia police officer and seasoned DEA Supervisory Special Agent opined that the contents of all four baggies contained methamphetamine. Drawing all reasonable inferences in favor of the jury verdict, I thus conclude that sufficient circumstantial evidence supported Sok's conviction for possession of over 50 grams of methamphetamine. Accordingly, Sok's Motion for Judgment of Acquittal on Count One will be denied.

**B. Challenge to the Sufficiency of the Evidence – Possession of a Firearm by a Convicted Felon (Count Three)**

Sok also seeks acquittal on Count Three, arguing that the Government failed to establish that he knew that his prior conviction was a felony, i.e, that he knew of his status as a person prohibited from carrying a firearm, as required by <u>Rehaif v. United States</u>, 139 S. Ct. 2191 (2019) and <u>United States v. Nasir</u>, 982 F.3d 144, 150 (3d Cir. 2020).

To obtain a conviction of a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), the government must prove beyond a reasonable doubt that:

1) The defendant knowingly possessed the firearm described in the Indictment;
2) Prior to the time that the defendant possessed the firearm, the defendant had been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year;
3) At the time that the defendant possessed the firearm, the defendant knew of his previous conviction and knew that it was for a crime punishable by imprisonment for a term exceeding one year; and
4) The defendant's possession of that firearm was in or affecting interstate or foreign commerce.

Rehaif, 139 S. Ct. at 2200; Nasir, 982 F.3d at 160, 170. Sok does not dispute that elements one, two, and four were established at trial. Rather, he argues that record does not support the third element.

For a previously convicted felon, the "knowledge-of-status element means that the government has to prove that he knew he was a 'person . . . who has been convicted . . . of . . . a crime punishable by imprisonment for a term exceeding one year." Nasir, 982 F.3d at 160 (quoting 18 U.S.C. § 922(g)(1)).

The Government opened its case on Count Three by reading the following stipulation, which was entered into evidence as Government Exhibit 23:

> Prior to April 24, 2019, defendant SUNNY SOK had been convicted in a court of the Commonwealth of Pennsylvania of a crime punishable by imprisonment for a term exceeding one year, that is, he had been convicted of a felony within the meaning of Title 18, United States Code, Section 922(g)(1), <u>and he had knowledge of this conviction</u>. Government Exhibit 19, the certified copies of conviction, are admitted into evidence support of this stipulated fact.

(Gov't Ex. 23 (emphasis added).) Government Exhibit 19, also admitted into evidence, set forth a June 24, 2016 "Order of Sentence," which reflected that Sok pled guilty to state court felony charges for (a) manufacture, delivery, or possession with intent to manufacture or deliver cocaine, in violation of 35 Pa. Cons. Stat. § 780-113 (A)(30) and (b) criminal use of communication facility, in violation of 18 Pa. Cons. Stat. § 7512(A). (Gov't Ex. 19 at 2.) The "Order of Sentence" directed,

"Weapons, Do not own or possess firearms: Do not own or possess or reside in home with firearms." (Id.)

Reviewing the record in the light most favorable to the Government, including Sok's plea to felony gun charges and an Order that he not possess a firearm, I conclude that sufficient evidence was presented to establish that Sok knew of his previous felony conviction and that he knew that his prior conviction was for a crime punishable by imprisonment for a term exceeding one year. Indeed, the stipulation that was captured in Government Exhibit 23 explicitly stated that he had such knowledge. Therefore, Sok's Supplement Motion for Judgment of Acquittal on Count Three will be denied.

## V. CONCLUSION

For the reasons discussed above, I will deny Defendant Sok's Motion and Supplemental Motion for Judgment of Acquittal. An appropriate Order follows.